Filed 6/25/25  Habib v. Abdalla CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| YASMIN HABIB,<br><br>          Plaintiff and Appellant,<br><br>v.<br><br>MOHAMED ABDALLA,<br><br>          Defendant and Respondent. | A171487<br><br>(Alameda County<br>Super. Ct. No. HF18905111) |

Plaintiff Yasmin Habib (mother) filed notices of appeal from an August 21, 2024, short form order continuing a hearing on a motion to modify child support; an August 27, 2024, minute order modifying travel restrictions for the parties' children (minors); and a September 11, 2024, order declaring her a vexatious litigant.  We affirm.

### BACKGROUND

In May 2018, mother petitioned for dissolution of her marriage to respondent Mohamed Abdalla (father).  Four years later, in July 2022, judgment of dissolution was filed.  Over the ensuing years, the parties filed various requests for modification of custody and visitation orders and restraining orders.

As relevant here, in July 2024, father, fearing mother "may flee with the children," sought changes in custody orders and requested minors'

1

passports be turned over to him. Father also sought an order declaring mother a vexatious litigant.

The following month, minors' counsel filed a request to be relieved as counsel and for appointment of new counsel. Counsel cited as the reason for the request a "breakdown in attorney client/communication and interference" by mother. According to counsel, mother had "undermined" his attorney/client relationship with minors by having minors record him, despite previously telling mother not to do so and despite admonishment by the court; had not made minors available for in-person meetings; and had directed one minor to "write letters to the court, circumventing" counsel. Additionally, mother had not supported minors' participation in therapy with father, which was a "huge problem." Finally, although recognizing it would be "a shocking upheaval" in minors' lives, counsel agreed with father's request that custody be changed. Counsel also "doubt[ed] [mother or the oldest daughter] would obey such an order," and he "suspect[ed] they might even flee the area."

The day after minors' counsel filed his request to withdraw, father filed a request for orders for temporary emergency custody of minors, possession of the minors' passports, and for child abduction prevention, citing mother's lack of compliance with custody and visitation orders, that mother was facing over 30 counts of contempt of court, and minors' counsel's concern that mother was an "urgent flight risk." Father requested an order preventing mother from traveling outside of the county, California, or the United States with minors without permission of the court. Father further asserted mother has family in Europe and has traveled with minors to visit family in Morocco without first informing him. Father also claimed mother had previously taken minors from Egypt without his permission when they had resided

there, and she had, "by her own admission . . . violated court ordered custody and visitation." Additionally, father maintained mother did not have strong ties to California because she "is not working and has not had full-time employment in years." Finally, he claimed mother had a "history" of not cooperating in parenting and taking minors without his permission. In this regard, father pointed to the numerous contempt charges, mother's "excessive court filings," minors' counsel's statements that it was " 'obvious [mother] doesn't support the minors having a relationship with their father' "; and counsel's suspicion " 'they might flee the area.' "

The court granted ex parte emergency custody and child abduction prevention orders and set a hearing. These included "Travel restrictions" that neither party could remove minors from the country, state, and more specifically Alameda County, unless the court allowed the parties to do so after a noticed hearing.

The day before the hearing, father filed an amended request for emergency and child abduction prevention orders, which the court granted. The amended order included findings that there "is a risk" (boldface omitted) mother will take minors "without permission" (boldface omitted) because she "has violated—or threatened to violate—a custody or visitation (parenting time) order in the past"; mother "does not have strong ties to California"; mother has a history of "not cooperating with the other parent or party in parenting"; and she "has family or emotional ties to another country, state, or foreign country." The court maintained the travel restrictions it had previously imposed but only as to mother and maintained the scheduled hearing date set for the following day.

At the hearing, on August 27, mother took issue with the court's findings, asserting she has "roots" in California because she had gone to

3

school in the United States since elementary school and had thereafter moved to California. She argued it was father, not her, who had ties to Egypt. As to "not cooperating," she claimed she responded to father "[w]ithin 24 hours." She also claimed she had "pushed" minors to see their father, but after they "beg[ged]" not to go, she no longer pushed them to do so.

The court granted counsel's request to be relieved as counsel for minors and appointed new counsel, granted emergency orders that minors' current passports be canceled, ordered that neither party may retrieve new passports for minors "until further order of the court," and maintained "the abduction orders (Travel Restrictions)" as to mother, modifying them to include that mother may take minors out of Alameda County to Contra Costa County to see their therapist. Based on all it had heard "during the pendency of this case," the court had "strong beliefs that [mother] will do anything she felt she needed to do to keep minors away from [father], whether it means disobeying court orders or not. [¶] And the fact that the Court had indicated the potential of changing custody, the Court agrees with [minors' counsel's] statement that, if the Court were to actually do that, that [mother] could very well flee with the minors. So the Court's orders remain in effect."

Two weeks later, on September 11, the court found mother was a vexatious litigant pursuant to Code of Civil Procedure section 391, subdivision (b)(1).

On September 16, mother filed two notices of appeal. The first states it is an appeal from the August 27 minute order but attaches as the appealed order a short form order following an August 21 hearing wherein child support matters were continued to January 2025. The second notice states it is an appeal from and attaches the September 11, 2024, vexatious litigant

4

minute order rather than the court's subsequent written order and findings declaring her a vexatious litigant.

**DISCUSSION**

### *August 21 and September 11 Minute Orders*

Although plaintiff purports to appeal from an August 21 minute order continuing the hearing on custody and visitation issues, and from the September 11 minute order declaring her a vexatious litigant, she makes no argument as to either order in her opening brief on appeal. We therefore deem any challenge to those two orders abandoned. (See *Tanner v. Tanner* (1997) 57 Cal.App.4th 419, 422, fn. 2 [appellant who specifies judgment or order in the notice of appeal but does not address that judgment or order in the opening brief abandons that portion of the appeal].)

### *August 27 Order*

Rather, mother's opening brief (the only brief filed in this appeal) focuses entirely on the child abduction prevention orders preventing her from traveling outside of Alameda County with minors except for taking minors to therapy in Contra Costa County. She maintains the trial court abused its discretion "by imposing unreasonable travel restrictions" without "proper consideration of the facts" and that it was father, and not her, who posed a "significant flight risk."

Family Code section 3048, subdivision (b)(1) provides, "In cases in which the court becomes aware of facts that may indicate that there is a risk of abduction of a child, the court shall, either on its own motion or at the request of a party, determine whether measures are needed to prevent the abduction of the child by one parent. To make that determination, the court shall consider the risk of abduction of the child, obstacles to location, recovery, and return if the child is abducted, and potential harm to the child

5

if the child is abducted. To determine whether there is a risk of abduction, the court shall consider the following factors: [¶] (A) Whether a party has previously taken, enticed away, kept, withheld, or concealed a child in violation of the right of custody or of visitation of a person. [¶] (B) Whether a party has previously threatened to take, entice away, keep, withhold, or conceal a child in violation of the right of custody or of visitation of a person. [¶] (C) Whether a party lacks strong ties to this state. [¶] (D) Whether a party has strong familial, emotional, or cultural ties to another state or country, including foreign citizenship. This factor shall be considered only if evidence exists in support of another factor specified in this section. [¶] (E) Whether a party has no financial reason to stay in this state, including whether the party is unemployed, is able to work anywhere, or is financially independent. [¶] (F) Whether a party has engaged in planning activities that would facilitate the removal of a child from the state, including quitting a job, selling the primary residence, terminating a lease, closing a bank account, liquidating other assets, hiding or destroying documents, applying for a passport, applying to obtain a birth certificate or school or medical records, or purchasing airplane or other travel tickets, with consideration given to whether a party is carrying out a safety plan to flee from domestic violence. [¶] (G) Whether a party has a history of a lack of parental cooperation or child abuse, or there is substantiated evidence that a party has perpetrated domestic violence. [¶] (H) Whether a party has a criminal record." (Fam Code, § 3048, subd. (b)(1)(A)–(H).)

We review the challenged orders for an abuse of discretion. (See, e.g., *Brewer v. Carter* (2013) 218 Cal.App.4th 1312, 1319–1320 [applying abuse of discretion standard of review where trial court ruling must account for and consider various statutory factors]; *In re Marriage of Smith* (1990)

6

225 Cal.App.3d 469, 479–480 [same].) " 'The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review.  The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary or capricious.' " (*In re Marriage of Walker* (2012) 203 Cal.App.4th 137, 146, quoting *Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711–712.)  A proper exercise of discretion must be based upon factual findings that are supported by substantial evidence.  (See *Department of Parks & Recreation v. State Personnel Bd.* (1991) 233 Cal.App.3d 813, 831 ["[I]n the absence of any substantial evidence supporting its findings, the Board has no discretion to modify or revoke the discipline imposed by the appointing power."].)  "No matter the reasoning of the trial court, we must uphold the ruling if it is correct on any basis.  [Citation.]  We draw all reasonable inferences in support of the court's ruling and defer to the court's express or implied findings when supported by substantial evidence." (*J.M. v. G.H.* (2014) 228 Cal.App.4th 925, 935.)

The trial court found there "is a risk" (boldface omitted) mother will take minors "without permission" (boldface omitted) because she "has violated—or threatened to violate—a custody or visitation (parenting time) order in the past" (§ 3048, subd. (b)(1)(A) & (B)); mother "does not have strong ties to California" (*id.*, subd. (b)(1)(C)); mother has a history of "not cooperating with the other parent or party in parenting" (*id.*, subd. (b)(1)(G)); and she "has family or emotional ties to another country, state, or foreign country"(*id.*, subd. (b)(1)(D)).  Indeed, the court concluded "[b]ased on everything that the Court has heard during the pendency of this case,"

mother may flee with the minors, especially in light of the court's indication it might change custody orders.

The trial court's findings are amply supported by the declarations of father and prior counsel for minors, and the history of the case with which the court was fully conversant. Mother, herself, had told the court that while she initially had "pushed" minors to attend visitation with their father, she had stopped doing so because minors had asked that they not go. Mother has also never disputed she has been unemployed for years. Indeed, in her income and expenses declarations filed in June and September 2024 mother indicated $0 for her salary. Although she claimed she had strong ties to California because when she "had to flee from Egypt" she "came back to California," her credibility was a matter for the trial court and, as a court of review, we cannot reweigh the evidence. (*Niko v. Foreman* (2006) 144 Cal.App.4th 344, 365 [Appellate courts " 'may not reweigh the evidence or determine credibility,' " rather, " '[c]redibility is a matter within the trial court's discretion,' and the reviewing court must defer to the trial court's findings on credibility issues."].) Finally, there were 34 counts pending for contempt proceedings and mother was facing a "potential 170 days in custody."

Although mother contends the travel restriction "unfairly limits" her ability to "care for and provide holiday experiences for her children," she acknowledges the court subsequently made allowances for her to travel to Florida with minors to attend a family wedding. In fact, she contends this allowance "demonstrates that the Family Court recognized [her] ability to responsibly travel with her children" and that she "poses no flight risk and is fully capable of complying with all legal obligations regarding custody and visitation." To begin with, the travel to Florida occurred *after* and pursuant

to the challenged order.  And in any case, this singular fact had it occurred prior to the hearing, would not have compelled the trial court to disregard all the other matters of concern the court took into account in issuing the orders restricting travel.

## DISPOSITION

The challenged orders are AFFIRMED.  Parties to bear their own costs on appeal.

_____

Banke, J.

We concur:


_____

Humes, P.J.


_____

Smiley, J.


A171487, Habib v. Abdalla