Filed 3/8/23  Marriage of Mendoza CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of ALEXANDRA and PABLO MENDOZA. | H049773 (Santa Clara County Super. Ct. No. 20151FL172133) |
| ALEXANDRA MENDOZA, Respondent, v. PABLO MENDOZA, Appellant. | |

Appellant Pablo Mendoza and respondent Alexandra Mendoza were married in 1994 and separated in 2015.[1]  In 2019, the parties reached an oral settlement following a mandatory settlement conference (MSC), and a judgment of dissolution was entered the following year that incorporated the terms of the oral settlement in a written marital settlement agreement (MSA).  Pablo later unsuccessfully moved to set aside the judgment of dissolution on the grounds of duress and mistake under Family Code section 2122.[2]

---

[1] We refer to the parties by their first names for clarity.

[2] Unspecified statutory references are to the Family Code.

On appeal, he argues that the trial court abused its discretion by denying his motion because there were material differences between the oral settlement following the MSC and the MSA that demonstrated there were material mistakes of fact. We affirm the trial court's order.

## I. BACKGROUND

### A. *The Oral Settlement at the MSC*

Pablo and Alexandra married in 1994 and had two children together. During their marriage, Pablo was self-employed as a landscaping contractor and Alexandra was employed at a large technology company. On August 31, 2015, Alexandra filed a petition for dissolution of her marriage to Pablo.

Both parties filed statements in preparation for a judicially supervised MSC. In Pablo's statement, he alleged that Alexandra had violated the automatic temporary restraining orders (ATRO's) imposed under section 2040 and had breached her fiduciary duty to him by selling approximately 342 shares of her company stock. Pablo also claimed that Alexandra had misappropriated funds during the marriage. He asserted that he was entitled to permanent spousal support as Alexandra earned a higher income and requested $20,000 in attorney fees for Alexandra's breach of fiduciary duty. Attached to Pablo's MSC statement was a report prepared by a forensic accounting expert that included several attachments, including a calculation of the community value of Alexandra's company stock as well as a calculation of the present value of spousal support due from Alexandra to Pablo.[3]

On May 16, 2019, the parties and their respective attorneys participated in the MSC before a pro tem judge. Following the MSC, the pro tem judge represented to the

---

[3] The accounting expert prepared a schedule that reflected that post-separation, Alexandra sold 375 shares of stock that were considered community property. It is unclear why Pablo referenced 342 shares in his MSC statement and his later pleadings.

2

trial court that the parties had reached a "complete settlement." In pertinent part, the pro tem judge recited on the record that the parties had agreed to the following terms:

The family residence, which was community property, would be awarded to Pablo subject to certain conditions, including that Pablo refinance the loan.

The parties agreed to mutually terminate their right to receive spousal support, and no party would have the right to request spousal support in the future. The parties acknowledged and agreed that "they've considered all the 4320 factors" and had the opportunity to discuss the issue with their attorneys and were making a "knowing, willing waiver of their right to receive spousal support."

Alexandra agreed to sign and endorse a check in Pablo's possession from the Internal Revenue Service (IRS), and Pablo would give Alexandra half of the check amount.

Moreover, "The parties waive[d] any and all claims for breach of fiduciary duty, *Watts*,[4] *Epstein*,[5] all reimbursement claims" and averred that there were "no other claims that remain between the parties that are viable."

After the pro tem judge indicated that this was the "entire settlement offer," the parties' attorneys made a few additional clarifications on the record. Pablo's attorney represented that "any and all credit card debts or other loans in each party's name shall be allocated to the respective party." Alexandra's attorney stated that with respect to the parties' vehicles, "[e]verybody keeps what they have and any incumbrance on it[,] and [Pablo] keeps his business." The pro tem judge added that Pablo would keep "any debt" on his business, but Pablo represented that his business had no debt. Thereafter, the pro tem judge noted that the parties were to "keep all vehicles that are in their respective names, husband or the respondent will keep any vehicles that are in his name or in the

---

[4] *In re Marriage of Watts* (1985) 171 Cal.App.3d 366 (*Watts*).

[5] *In re Marriage of Epstein* (1979) 24 Cal.3d 76 (*Epstein*).

3

name of his construction company, he's also awarded hundred percent interest in the construction company."

As for the parties' credit cards, the pro tem judge clarified: "Both parties have credit card debt that they've incurred after the date of separation and each party is assuming all credit card debt in their respective names and holding the other party harmless from any liability from, not just credit card debt, but any other debt they've incurred after the date of separation." The pro tem judge identified the date of separation as March 26, 2015.

Afterwards, the trial court examined both parties under oath, and both Alexandra and Pablo confirmed that they had participated in the MSC, heard and understood all the terms of the stipulation that the pro tem judge had just orally recited, and were in agreement that the stipulation could become the judgment of the court. The trial court then orally granted the judgment of dissolution of the parties' marriage.

**B.**     ***The Written Judgment of Dissolution and the MSA***

Following the MSC, the parties disputed the terms of the oral settlement and what should be incorporated into the final judgment of dissolution. In June 2019, Alexandra filed a request with the trial court to enforce the agreed-upon terms pertaining to the sale of the family residence. The following month, the trial court held a hearing and found there were reasonable grounds to extend the time for Pablo's performance for fifteen days to permit him time to complete a refinance. The trial court then directed Pablo's attorney to send Alexandra's attorney the "latest version of [his] proposal on the judgment package" and instructed Pablo's attorney to file objections if anything in the judgment package was unacceptable.

In September 2019, Pablo, who had since retained new counsel, requested that the trial court issue a status-only judgment and to reserve all other issues for further discussion. According to Pablo's attorney, after the trial court had ordered the parties to memorialize the judgment in writing, Pablo realized that "terms of the agreement were

4

never discussed . . . by the MSC." Alexandra's attorney argued that the MSC was a judicially supervised settlement that was effective on May 16, 2019, upon each of the parties orally confirming the terms of the settlement on the record in the presence of their attorneys. Nonetheless, the trial court had not yet issued a formal entry of a written judgment, and each party had submitted their own version of what they believed the written judgment should entail. The trial court ruled that it was not going to sign any of the judgments prepared by the parties and that the judgment "remain[ed] subject to be enforced by appropriate motion." The trial court denied Pablo's request for a status-only judgment.

In December 2019, Alexandra filed a petition to enforce the terms of the oral settlement under Code of Civil Procedure section 664.6. Attached to the petition was a copy of the stipulated judgment previously prepared by Alexandra's attorney that Alexandra believed was consistent with the terms of the oral settlement reached by the parties at the MSC.

On January 22, 2020, Pablo filed a responsive declaration to Alexandra's petition. According to Pablo, the settlement reached by the MSC was "based on wrong facts" and "things that [he] did not fully understand" and was also the result of "a lot of pressure from all the parties." Pablo claimed that the MSA addressed many issues that had not been previously discussed at the MSC, and he listed numerous objections.

Alexandra filed a reply to Pablo's responsive declaration. She asserted that the parties had reached a "global resolution" of the case at the MSC and that Pablo should not be allowed to reargue issues that had been previously resolved.

Following a hearing on February 5, 2020, the trial court granted Alexandra's petition to enforce the terms of the judgment and directed her attorney to submit the final judgment for the trial court to sign. Thereafter, the trial court signed the written judgment of dissolution, which incorporated a written MSA. In part, the written MSA contained the following terms:

5

"Warranty of Disclosures of Property: Each party warrants to the other that all property in which the community and quasi-community has or may have an interest of which either has any knowledge has been disclosed and listed in this agreement. Each party further warrants that neither is possessed of any interest in any property not set forth in this Agreement, whether community, quasi-community, tenancy in common or joint tenancy property. [¶] The parties acknowledge their understanding that they are subject to 'fiduciary duties' as defined by California Family Code sections 721, 1100(e), 2100 and 2102, which include, but are not limited to, the obligation to make full disclosure of all material facts and information regarding the existence, characterization and valuation of all assets in which the community has or may have an interest and debts for which the community is or may be liable, and to provide equal access to all information, records and books pertaining to the character and value of those assets and debts upon request; and they further acknowledge that each has conscientiously endeavored to fulfill the duties of disclosure imposed upon each of them by said Family Code sections with respect to this Agreement."

"Division of Debts and Obligations: The parties agree that they have provided for the payment of all joint debts between them of which they are aware, and if any debts for which they are jointly liable are discovered after the effective date of this Agreement which are not provided for in this Agreement, each party will pay and hold the other harmless against one-half of such debt. [¶] The Husband shall be responsible for any and all debts payable to EDD or IRS. Otherwise, each party is responsible for any and all other debts in their own name such as car loan, credit card debt, personal debt, etc."

"Spousal Support Waiver: Each of the parties hereby waives any right to spousal support, and each releases the other from any and all claims for spousal support or maintenance of any kind. Each party acknowledges and agrees that the waiver of spousal support set forth in this paragraph is made in consideration of their mutual promises, conditions and agreements contained in this Agreement, and each party acknowledges

6

and agrees that there shall be no reservation of jurisdiction by the Court in the dissolution proceeding to award spousal support at any later time.  The parties further acknowledge and agree that no sums of spousal support are presently due either party, and that no sums of money or other form of property paid by either to the other since their separation were for or shall be considered spousal support."

"Attorney Fees and Costs of Suit:  The parties agree that each will be individually liable for payment of attorney fees and all costs of suit incurred by each party respectively."

### C.     *The Motion to Set Aside the Judgment*

Approximately a year after the judgment of dissolution was entered, Pablo filed a motion to set aside the judgment under section 2122, subdivisions (e) and (f).  Pablo argued that there had been mutual mistakes of fact, and he had agreed to the settlement under duress.  Pablo asserted that he and Alexandra had not known how much they owed to IRS or to the California Franchise Tax Board (FTB) when they agreed to the stipulated judgment.  According to Pablo, he had incorporated his landscaping company after the parties separated in 2018, but the business was initially a self-proprietorship that had been the "main source of income" for the family before their separation.  In 2020, he received 12 business tax notices from the IRS amounting to a total of $75,660, and the parties owed federal income tax for certain years during their marriage between 2009 and 2015 based on notices from both the IRS and the FTB.  Attached to his declaration were past-due notices from the IRS addressed to "Pablo V Mendoza" and his landscaping company dated between 2009 and 2013, as well as a notice of proposed assessment from the FTB addressed to Pablo Mendoza.

Pablo also claimed that the marriage also had substantial debts that the parties had initially thought were discharged following a bankruptcy, his former attorney was negligent, and he only agreed to the terms based on duress and pressure in the mandatory settlement conference.

7

Moreover, Pablo asserted that Alexandra had breached her fiduciary duty by misappropriating her income during marriage, violating the automatic temporary restraining orders (ATRO's), and diverting marital funds to unknown accounts after the parties' separation. According to Pablo, "There was no evidence or a finding I know to support [the warranty of disclosures], to the very least [it] was limited and incomplete information." Pablo insisted that Alexandra had sold 342 shares of her company stock after the parties' separation.

Pablo also claimed that based on "documentations I have at that time and the analysis of my expert," Alexandra "should be paying [him] permanent spousal support" and it "would be a mistake for [him] to have agreed to waive support" had he known of her actual worth.

And finally, Pablo argued that attorney fees were never discussed by the parties at the mandatory settlement conference and that he had "spent tens of thousands of dollars" on attorneys; therefore, "it would be a mistake for me to have waived it without knowing the financial worth of [Alexandra]."

Alexandra filed a responsive declaration. Again, Alexandra maintained that the parties had reached a global resolution of the case following the MSC. Alexandra argued that the time period for moving for relief under Code of Civil Procedure section 473, subdivision (b) had expired and that Pablo had unreasonably delayed filing his motion for a year after Alexandra successfully filed the request to enforce the judgment in February 2020. She also asserted that Pablo was "clearly not under duress" during the MSC and, to the contrary, had a history of violence and harassment towards her.

According to Alexandra, Pablo had been awarded his "business and any debt on it" after the MSC, so there was no basis for him to allege that there was any additional community debt. The IRS notices that Pablo had attached were reminder notices for past due taxes for his landscaping company. Moreover, Pablo had filed taxes for the years 2009 through 2013 without Alexandra's knowledge or consent, and any credit card

8

debt was related to Pablo's business, of which he was in possession of all information and documentation. Pablo had also previously estimated in his 2016 preliminary declaration of disclosure that he owed approximately $40,000 in Employment Development Division (EDD) employment taxes from 2010 through 2015. As Pablo did not pay the taxes, Alexandra claimed that it was "entirely foreseeable and likely" that he now owed $75,660. Alexandra pointed out that in Pablo's 2016 preliminary declaration, he also listed $600,000 in credit card debt with a note that the "[d]ebt was dismissed in Bankruptcy" and that the "[a]ccounts were closed and discharged through 2010." In his final declaration of disclosure served in 2019, Pablo listed no community debt and provided no credit card debt, though he listed one credit card account and stated that there were "[s]everal debts lingering from bank." As for the payroll taxes owed to both the EDD and the IRS, Pablo listed those as unknown and "TBD."

Alexandra further denied misappropriating income during the marriage. Alexandra argued that in extensive discovery that involved forensic accountants, Pablo had come up with "absolutely zero evidence of any breach of fiduciary duty." Moreover, Alexandra insisted that the alleged violation of the ATRO's was discussed during the MSC, and she had sold her stock as she needed money for a divorce attorney.

Before the hearing on the motion to set aside the judgment of dissolution, both parties filed hearing briefs reiterating their prior arguments.

### D.     *The Hearing on the Motion to Set Aside the Judgment*

At the hearing on the motion to set aside held on September 28, 2021, Pablo testified that he started his landscaping company during his marriage with Alexandra, and the company was incorporated in 2018. Until the company's incorporation, he paid taxes and payroll taxes for the company based on its status as a self-proprietorship. Alexandra handled the finances for the company. The parties jointly filed for Chapter 11 bankruptcy in 2010. The bankruptcy case ended in 2015 after the parties separated because Alexandra was uncooperative. At the time, Pablo believed that the debts that had

9

been listed in the bankruptcy proceeding had been discharged, but he later received collection notices from creditors for those debts.

At the time of the MSC, Pablo's former attorney told him to agree to the terms and that the debts would be discussed later. Had Pablo known about the exact amount of taxes and debts he owed, he would not have agreed or consented to the terms laid out at the MSC. Likewise, he was pressured by his attorney to answer affirmatively to the trial court when he was voir dired after the MSC. According to Pablo, he was only able to participate for about 20 minutes of the MSC, and the pro tem judge told him that she was "not going to listen to anything" he said and that she knew that he was a contractor and "contractors hide money." His former attorney also "threaten[ed] to walk away" if Pablo did not agree to the settlement at the MSC. Pablo claimed that after the MSC, he saw the pro tem judge and Alexandra "kissing each other and patting and laughing about it." The only issues discussed at the MSC were the division of the family home and his ability to visit his children. He believed that he was coerced into agreeing to the terms of the MSC in exchange for being able to see his children.

Pablo believed that the IRS notices were for taxes incurred during the parties' marriage. The amount of taxes that he owed was different than the amount of taxes and debts that he had in mind at the time of the MSC. The forensic accountant that Pablo had hired prior to the MSC had submitted a report that indicated that there was an EDD state lien for the years between 2009 and 2015 that was paid post-separation in 2016.[6] Pablo, however, testified that he did not receive any IRS notices until August 2020. He asserted that had he known of the value of Alexandra's stocks, he would not have agreed to the terms of the MSC. Nonetheless, Pablo acknowledged that the MSA was prepared jointly by both parties' respective attorneys.

---

[6] The accounting expert's report that was attached to Pablo's MSC statement included a calculation of the post-separation reimbursements owed to him, which included a $27,009 EDD tax lien for the tax periods between July 2009 and June 2015.

10

Alexandra testified that she had previously assisted with Pablo's landscaping company, but she became less involved after she started her position at the technology company in 2010. Alexandra did not complete any of the payroll or tax forms for the landscaping company, and Pablo was responsible for preparing those items. Alexandra had never received any notices from the FTB or the IRS that were related to Pablo's claims.

After considering the parties' testimony, the trial court denied Pablo's motion to set aside the judgment. First, the trial court did not credit Pablo's claim that he had been pressured by his attorney into agreeing to the settlement reached at the MSC. Second, the trial court found that the pro tem judge did not act inappropriately. Third, the trial court found some of Pablo's testimony to be inconsistent, as some of the debts that he allegedly believed would be discharged in bankruptcy were listed as debt in his 2016 preliminary disclosure and schedule of assets and debt. Moreover, as the spouse who owned, worked at, and managed the landscaping company, Pablo was the one who would have held information regarding the amount of taxes owed by the company. Finally, the trial court stated that Pablo had received the benefit of any disagreement, as he received an extension for refinancing his house.

Pablo timely appealed.

## II.    DISCUSSION

On appeal, Pablo argues that there are four material differences between the agreement the parties reached at the MSC and the MSA that was ultimately incorporated into the judgment of dissolution. He argues that the material differences demonstrate that the trial court abused its discretion in denying his motion to set aside the judgment of

11

dissolution.[7] As we explain, we find no merit in Pablo's contentions and affirm the order denying his motion to set aside the judgment.

## A. *Legal Principles and Standard of Review*

Here, following a judicially supervised MSC, the parties agreed to a stipulated settlement which was presented orally by the pro tem judge to the trial court, and the parties orally confirmed their understanding of the terms and their agreement to be bound by those terms. Such an agreement is enforceable pursuant to Code of Civil Procedure section 664.6. (*In re Marriage of Assemi* (1994) 7 Cal.4th 896, 905-906.) Code of Civil Procedure section 664.6, subdivision (a) empowers the trial court to enter judgment "pursuant to the terms" of the parties' settlement agreement, which it did when it entered the judgment of dissolution that incorporated the written MSA.

Under section 2122, there are six exclusive grounds to set aside a judgment: actual fraud, perjury, duress, mental incapacity, mistake, or failure to comply with the disclosure requirements. (§ 2122, subds. (a)-(f); *In re Marriage of Binette* (2018) 24 Cal.App.5th 1119, 1125 (*Binette*).)

To set aside a judgment based on mistake, the mistake may be "either mutual or unilateral, whether mistake of law or mistake of fact." (§ 2122, subd. (e).) "[S]pouses may be relieved of a stipulated judgment based upon incomplete or inaccurate information." (*Brewer v. Federici* (2001) 93 Cal.App.4th 1334, 1345.) " 'In addition to establishing mistake, the party seeking relief must also establish that "the facts alleged as the grounds for relief materially affected the original outcome and that the moving party would materially benefit from the granting of the relief." ' " (*Binette*, *supra*, at p. 1125.)

We review an order granting or denying a motion to set aside a judgment under section 2122 for an abuse of discretion. (*Binette*, *supra*, 24 Cal.App.5th at p. 1125.) We

---

[7] Although Pablo argued in the trial court that the judgment should be set aside due to duress, he does not reargue this ground on appeal.

12

must review the trial courts' factual findings for substantial evidence. (*In re Marriage of Walker* (2012) 203 Cal.App.4th 137, 146 (*Walker*).) When reviewing a factual finding for substantial evidence, we examine the evidence in the light most favorable to the prevailing party and do not reweigh the evidence or reconsider credibility determinations. (*In re Marriage of Calcaterra & Badaksh* (2005) 132 Cal.App.4th 28, 34 (*Calcaterra & Badksh*).)

**B.      *Waiver of Fiduciary Duties***

First, Pablo argues that following the MSC, the parties agreed that "[t]he parties waive[d] any and all claims for breach of fiduciary duty, *Watts*, *Epstein*, all reimbursement claims" and there were "no other claims that remain between the parties that are viable." Yet, as Pablo points out, the MSA ultimately included a warranty of disclosures of property where each party acknowledged that they understood they were subject to fiduciary duties under sections 721, 1100, subdivision (e), 2100, and 2102, and each also acknowledged that that each party had "conscientiously endeavored to fulfill the duties of disclosure imposed upon each of them by said Family Code sections with respect to this Agreement." Pablo argues that the agreed-upon waiver following the MSC is thus materially different than the MSA's acknowledgment that each party was a fiduciary of the other, and the discrepancy demonstrates that the MSA was entered as a result of a mistake.

Preliminarily, we note that Pablo does not appear to have raised this argument in the trial court. In none of his moving papers did he argue that the warranty term contained in the MSA materially differed from the oral settlement at the MSC for a waiver of fiduciary duty claims. And generally, " ' "[a] party is not permitted to change his position and adopt a new and different theory on appeal. . . ." ' " (*In re Marriage of Biderman* (1992) 5 Cal.App.4th 409, 414.)

Moreover, even if we were to consider his claims, we must reject them on the merits. Although the language of the oral waiver of claims for breach of fiduciary duty is

not identical to the warranty of disclosures as written in the MSA, the terms are not materially at odds. At bottom, Pablo agreed to waive all claims for breach of fiduciary duty at the MSC, and the MSA's warranty merely reflects such a waiver by memorializing the parties' guarantee that they *had*—to that point—each "conscientiously endeavored" to fulfill their duties of disclosure. The MSA does not, as Pablo asserts, suggest that the parties remain each other's fiduciary. To the contrary, the MSA explicitly states that the parties "intend this Agreement to be a final and complete settlement" and that "each party releases the other from any and all . . . obligations and liabilities owing to the other."

Furthermore, Pablo's arguments pertaining to the warranty of disclosure of property appear to be focused not on whether the terms of oral settlement at the MSC and the MSA differ, but on whether he miscalculated by waiving his claims that Alexandra breached her fiduciary duty to him by selling her stock, violating the ATRO's, or by misappropriating marital funds—and whether Pablo intended to waive those claims at the MSC. Yet crucially, all these alleged breaches of fiduciary duty were set forth in detail in Pablo's MSC statement—*before* Pablo waived his claims for breach of fiduciary duty. As these same claims for breach of fiduciary duty were raised before the MSC, we fail to see how Pablo has demonstrated that he made a mistake of fact when he later agreed to the waiver. Pablo cites no new evidence in support of his claims of breach of fiduciary duty, nor does he argue that he was unaware of these claims before he agreed to waive them.

In other words, to the extent that Pablo claims that he mistakenly waived his right to a claim of a breach of fiduciary duty, he has not demonstrated that his waiver was based on "incomplete or inaccurate information." (*Brewer*, *supra*, 93 Cal.App.4th at p. 1345.) Substantial evidence thus supports the trial court's implied determination that Pablo did not waive claims pertaining to a breach of fiduciary duty based on a mistake of fact. (See *Walker*, *supra*, 203 Cal.App.4th at p. 146.)

14

## C.     *Waiver of Spousal Support*

Pablo argues that he never agreed to a waiver of spousal support, as indicated by the transcript of the hearing following the MSC.  Thus, he claims that the waiver of spousal support in the MSA must be the result of a mistake.  We conclude that Pablo's argument is premised on a misreading of the transcript.

The transcript reflects that the pro tem judge made the following statement after the MSC:  "They've agreed that they've had the opportunity to consider that—their right to spousal support and discuss it with their attorneys and they are making a knowing, willing waiver of their right to receive spousal support.  [¶]  The petitioner—No.  The respondent has in his possession a check for $5,300 made out to both of the parties from the IRS."  Pablo argues that it was *he* who answered "No" when the pro tem judge discussed the waiver of spousal support.  This is not our reading of the transcript: according to the transcript, it was the pro tem judge who said, "The petitioner—No."  In other words, the pro tem judge initially started to say that it was the petitioner who had the IRS check, then realized her error and corrected herself to say that it was the respondent (Pablo) who was in possession of the check.  The record thus does not reflect that Pablo refused to waive his right to spousal support.[8]

Nonetheless, Pablo argues that a refusal to waive his right to spousal support is more commensurate with his original position before the MSC, as he initially sought permanent spousal support in his MSC statement.  Irrespective of his position before the MSC, the record is unambiguous:  Pablo expressly waived spousal support as part of the oral settlement.  When the pro tem judge described the waiver of spousal support, Pablo raised no objections, asked no questions, and sought no additional time to consult with counsel.  And in voir dire, Pablo affirmed that he had heard and understood the terms of

---

[8] Indeed, Pablo's reading of the record is also at odds with the fact that he was not the petitioner in the case—Alexandra is the party that petitioned for dissolution of the marriage.

15

the settlement as stated, had the opportunity to discuss the terms with his attorney, and was willing to agree to the terms and make them part of the parties' judgment.

As Pablo himself indicates, he initially sought permanent spousal support and even included a report prepared by a forensic accountant that calculated the present value of spousal support that he should receive from Alexandra. The report was attached to the MSC statement that he initially filed. Pablo has not presented any cognizable evidence or argument that there was a mistake of fact about the level of spousal support he would have been able to obtain at the time of the MSC or that he was under some material misassumptions about spousal support when he agreed to the settlement. In fact, the only evidence in the record is that he *was* aware of the spousal support issue, as evidenced by his MSC statement. He has therefore failed to establish that he had operated under a mistake or that there were omitted facts that "materially affected the original outcome." (*Binnette*, *supra*, 24 Cal.App.5th at p. 1125.)

In his motion to set aside the judgment, Pablo asserted that based on his forensic accountant's analysis, Alexandra "should be paying [him] permanent spousal support" and it "would be a mistake for [him] to have agreed to waive support." We express no opinion on the merits of this assertion, but even if we assume it to be correct, section 2122 does not permit the trial court to set aside a judgment based on a party's remorse. Generally, "[a] mistake of fact is when a person understands the facts to be other than they are." (*Hodge Sheet Metal Products v. Palm Springs Riviera Hotel* (1961) 189 Cal.App.2d 653, 656.) Pablo makes no claim that he was mistaken about any of the predicate facts that would inform an award of spousal support, only that the ultimate decision he made based on those facts was, in his retrospective estimation, unwise. And ordinarily, "[a] judgment will not . . . be vacated at the demand of a defendant who was either grossly negligent or changed his mind after the judgment." (*Id.* at p. 657.) In other words, Pablo does not demonstrate that he waived spousal support based on a mistake of fact.

16

**D.** *Attorney Fees*

Pablo argues that during the MSC, there was no mention of attorney fees. However, the MSA contains a provision as follows: "The parties agree that each will be individually liable for payment of attorney fees and all costs of suit incurred by each party respectively." Pablo thus argues that it is clear that there was a mistake of fact as to the terms of the MSA because a waiver of attorney fees was never discussed at the MSC.

We disagree. Prior to the MSC, Pablo filed an MSC statement that requested $20,000 in attorney fees for Alexandra's breach of her fiduciary duty. In entering their agreement after the MSC, the parties averred that there were "no other claims that remain between the parties that are viable" and made no provision for the award of attorney fees between the parties. Implicit in the omission of any award of attorney fees following the MSC is the parties' agreement to bear their own attorney fees—in other words, that no further claims remained between them. (See *Garrett v. Garrett* (1968) 258 Cal.App.2d 407, 420 [finding that there was an implied waiver of attorney fees when the parties expressed that they intended settlement to be the "full and final settlement of all claims"].)[9] Pablo has not demonstrated there is a discrepancy between the MSC and the MSA. The MSA merely incorporates what was decided by the parties' settlement following the MSC when they agreed there were no additional claims between them.

Accordingly, Pablo has not demonstrated the existence of a mistake of fact that justifies setting aside the judgment. (See *Brewer*, *supra*, 93 Cal.App.4th at p. 1345.)

---

[9] Here, "California ascribes to the 'American Rule' under which parties must bear their own attorney fees unless a statute or contract expressly provides for such." (*Chan v. Curran* (2015) 237 Cal.App.4th 601, 623-624.) Pablo initially claimed in his MSC statement that he was entitled to attorney fees as a sanction for Alexandra's breach of her fiduciary duty under section 1101, subdivision (g). Yet Pablo did not raise this issue before the trial court when the pro tem judge recited the oral settlement, nor did he argue he was entitled to attorney fees on any other statutorily authorized grounds.

17

**E.**     *The IRS and EDD Debt*

Finally, Pablo argues that the MSA contains a provision that he "shall be responsible for any and all debts payable to EDD or IRS," but such a provision was not contemplated by the parties at the MSC.  He argues that at the hearing on the motion to set aside the judgment, he presented invoices from the IRS showing past-due amounts for taxes incurred during the parties' marriage between the years 2009 and 2013, and he testified during the hearing that he did not receive the invoices until August of 2020.  Thus, Pablo insists that his agreement to accept all debts owed to the IRS and to the EDD was based on a mistake of fact, as he did not discover the amount of taxes and debts owed until after the parties agreed to their settlement.  We conclude that substantial evidence supports the trial court's finding that there was no mistake of fact as to the amount of taxes that Pablo's business owed.

Based on the invoices submitted by Pablo, the IRS debt is solely related to Pablo's landscaping company.[10]  And, although Pablo did not submit any invoices or notices from EDD, we presume from his disclosures that the EDD debt was related to the landscaping company's payroll tax.[11]  From reviewing the record, we agree that there is evidence to support Pablo's claim that he was unaware of the total amount of debt that his company owed.  At the hearing that was held following the MSC, the parties agreed that Pablo would keep "any debt" incurred by the landscaping company, but Pablo at that time represented that his business had no debt.  And, as stated, Pablo testified at the hearing on the motion to set aside the judgment that he did not know about the debt owed until after the MSC.

---

[10] All of the IRS invoices that Pablo attached were addressed to "Pablo V Mendoza" and to the name of his landscaping company.

[11] For example, the EDD taxes were described in Pablo's 2016 disclosure as "[e]mployment taxes," and in his 2019 disclosure as "[p]ayroll."

There is, however, also evidence to support the trial court's conclusion that there was no mistake of fact. Although Pablo had previously indicated that he believed his debts were discharged in bankruptcy, he also indicated on his post-bankruptcy 2016 preliminary disclosure that he owed approximately $40,000 in EDD employment taxes from 2010 through 2015. And in Pablo's final declaration of disclosure filed in 2019, he indicated that the amount owed to both the EDD and IRS were "TBD," implying that he knew that he did owe *some* amount. Likewise, Pablo's MSC statement indicated that he had paid $27,009 for an EDD tax lien for the periods between June 2009 and July 2015, which belies his claim that he believed that his debts had all been discharged in bankruptcy.

Furthermore, at the hearing, Alexandra testified that even though she had been initially involved with Pablo's landscaping company during the marriage, she became less involved in 2010 when she started working at the technology company. Alexandra further testified that she was not involved in completing the company's payroll or tax forms and that Pablo was in charge of those items. The trial court could have reasonably credited Alexandra's testimony that *Pablo* was the one who was in charge of the landscaping company's taxes. (See *In re Marriage of Turfe* (2018) 23 Cal.App.5th 1118, 1127 [appellate court does not reweigh witness credibility].) And it would have been reasonable for the trial court to infer that as the one who prepared the tax forms, Pablo knew the amount of taxes the company owed. The trial court could have also discredited Pablo's testimony that the IRS did not send him any notices of past-due taxes until August 2020, as the invoices he presented were for tax years between 2009 and 2013.

For these reasons, *In re Marriage of Varner* (1997) 55 Cal.App.4th 128 is distinguishable. In *Varner*, the Court of Appeal reversed the trial court's denial of a wife's motion to set aside the stipulated dissolution judgment after concluding that the husband had failed to disclose the true value of certain assets. (*Id.* at p. 144.) The *Varner* court held that the wife could set aside the judgment under section 2122 on the ground of

19

mistake, as the wife had submitted documents showing the true value of the assets prepared by her experts as well as her husband's experts, yet the only evidence to support the husband's valuation was his own testimony. (*Varner*, *supra*, at pp. 143-144.) *Varner* thus held that "[t]he facts submitted to this court on appeal *compel* a finding that husband breached his duty" to provide an accurate and complete disclosure of all assets and liabilities. (*Id.* at p. 143, italics added.)

Unlike *Varner*, the facts before the trial court do not compel a finding that Pablo was mistaken about the amount of debt his company owed at the time of the MSC. And *Varner* itself acknowledged that " '[t]he showing on appeal is wholly insufficient if it presents a state of facts . . . which . . . merely affords an opportunity for a difference of opinion. An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " (*Varner*, *supra*, 55 Cal.App.4th at p. 138.) Here, there was evidence that supported the trial court's conclusion that there was no mistake of fact. (*Calcaterra & Badaksh*, *supra*, 132 Cal.App.4th at p. 34.) As substantial evidence supports the trial court's finding, our inquiry must end; thus, the trial court did not err by denying Pablo's motion to set aside the judgment on this ground.

**F.     *Conclusion***

Based on the foregoing, the trial court did not abuse its discretion when it denied Pablo's motion to set aside the judgment. (See *Binette*, *supra*, 24 Cal.App.5th at p. 1125.) [12]

---

[12] In her respondent's brief, Alexandra argues that the motion to set aside the judgment was also subject to a laches defense. (See *In re Marriage of Stevenot* (1984) 154 Cal.App.3d 1051, 1075.) "Laches is an equitable time limitation on a party's right to bring suit, resting on the maxim that 'equity aids the vigilant, not those who sleep on their rights.' " (*Magic Kitchen LLC v. Good Things Internat., Ltd.* (2007) 153 Cal.App.4th 1144, 1156.) As we affirm the trial court's order denying Pablo's motion to set aside the judgment, we need not consider Alexandra's claims regarding a laches defense.

### III.   DISPOSITION

The order denying Pablo's motion to set aside the judgment is affirmed.

Alexandra is entitled to her costs on appeal.

_____

LIE, J.

WE CONCUR:

_____

GROVER, ACTING P.J.

_____

DANNER, J.

*Mendoza v. Mendoza*
H049773